# THE SUPREME COURT

| 40 | 241 |
| 133 | 245 |

OF

# PENNSYLVANIA.

## NORTHERN DISTRICT—SUNBURY 1861.

## Hursh *versus* North, Chase & North.

*Custom of Merchants as to Credit on Sale of Goods—Evidence of, in Action for Goods Sold and Delivered.*

1. Where suit was brought for a bill of goods sold more than six years before, and the Statute of Limitations was pleaded; evidence of the practice and custom of the trade to sell goods upon a system of credits, was held inadmissible for the purpose of proving that the price was not to be paid when the goods were sold, but on a certain date thereafter, so as to avoid the bar of the statute by showing that the bill was not due until within the six years: and it was error in the court below to receive the evidence and refer it to the jury as testimony from which they might infer a contract different in terms from that exhibited in the account.

2. But if any such general custom had been proved, or a special custom affecting the peculiar locality or trade, it would have been the law of the contract, and both parties would have been bound by it.

3. The usage and practice of the firm, though not good as a custom, would have been binding, if expressly made part of the contract, or shown to have been known and assented to by the defendant at the time: and evidence of such a contract, either direct, or by proving a course of dealing between the parties on such terms, and of such frequency, as to justify the inference that the transaction was on the accustomed terms, is admissible.

ERROR to the Common Pleas of *Union county*.

This was an action of *assumpsit*, brought November 29th

4 WR.—16                                                     (241)

1858, by Gibson North, Pliny Chase, and Asa W. North, partners doing business as North, Chase & North, against Joel Hursh, ·to recover the sum of $452.80, for stoves sold and delivered to the plaintiff.

The declaration was in the usual form for goods sold and delivered, to which the defendant pleaded *non assumpsit*, payment, with leave, and subsequently added the plea of "*actio non accrevit infra sex annos.*"

On the trial of the cause the plaintiffs gave in evidence the fact, that a bill of stoves was bought by the defendant August 19th 1852, and were then permitted, against the objection of the defendant, to give evidence of a custom existing among merchants engaged in the business followed by the plaintiffs, by which all bills between the 1st of July and January must be settled by one half cash, and the other half by a note on the 1st of January; and bills bought between that time and July, on the 1st of that month; and that the bills thus bought were not due until the time of settlement.

The court below instructed the jury that they should determine from all the evidence in the case, whether the sale was made on the terms that the defendant was not to be called on for payment until January 1st 1853; adding, "if these were the terms upon which the plaintiff sold, the statute would not be a bar."

There was a verdict and judgment in favour of the plaintiff for $674.24; whereupon the defendant sued out this writ, and assigned for error here the admission of the evidence of the custom as above stated, and the instruction given to the jury in regard to it.

*Samuel H. Orwig*, for plaintiff in error, cited and relied on Addison on Contracts, p. 854; 1 Gr. Ev. § 52, p. 70; Newbold *v.* Wight & Sheldon, 4 Rawle 212–13; Rapp *v.* Palmer, 3 Watts 179; 11 Mad. 160; 7 Vin. Abr. 187; 2 Sumner 567; and·Coxe *v.* Heisly, 7 Harris 246.

*G. F. Miller*, for defendants in error, argued that the ruling of the court below was warranted by the case of Lelar *v.* Brown, 3 Harris 215.

The opinion of the court was delivered, October 31st 1861, by
THOMPSON, J.—To establish that the bill of goods for which this suit was brought, was sold on credit, and would not be due until the 1st of January ensuing its date, and thus to avoid the bar of the Statute of Limitations, the court admitted evidence against the objections of the defendant below, to show a usage

[Hursh *v.* North.]

or practice of the plaintiffs to sell on credit without such terms being expressed. That wares sold between the 1st of July and January "must be settled by one half cash, and the other half by note, at three months, on the 1st of January, and between that time and July, on the 1st of that month." This bill of goods was sold and charged on 19th August 1852, and was claimed by the plaintiffs as not being due until 1st January 1853.

It was not pretended that any general custom existed in the country to this effect, or any special custom affecting either the particular locality or trade. A custom is something which has the force and effect of law; is law by the usage and consent of the people. But it must be uniform and universal within the sphere of its action, and so ancient "that the memory of man runneth not to the contrary:" 1 Bl. Com. 68–74; 4 Rawle 212; 3 Watts 179.

It was nothing like that which the plaintiffs' testimony tended to prove. If it had been, it will be conceded that the custom would have been the law of the contract, and both parties would have been bound by it. The one would not have been liable to suit, nor the other to the running of the statute until the customary credit had expired. It was not this, however, which the testimony was offered to prove, but the practice and usage of the firm in regard to giving credit. Now, as this was not good, as a custom, according to the definitions, it did not, *ex proprio vigore*, bind. How else could this practice, if it existed, have effect? We answer, either by being expressly made parcel of the terms of the contract, or shown to have been known to the defendant and assented to. And this might be shown either by express proof, or by proving a practice or habit of dealing between plaintiffs and defendant, on such terms of such frequency, as to justify an inference that this transaction was on the accustomed terms. Evidence of this nature would have justified the reference of the question to the jury, from which to ascertain the terms of the contract and the credit given, but that received did not. It was error, therefore, to receive it, and consequently error to refer it to the jury as evidence from which they might extract a contract different in terms from that exhibited by the account.

Judgment reversed, and *venire de novo* awarded.